**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATSY BUCCIERO, JULIUS BAUMGARDT, and RUTH GARDNER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AMROCK, LLC, <br><br> Defendant. | Case No.: 7:23-cv-4953 <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMAND** |

Plaintiffs Patsy Bucciero, Julius Baumgardt, and Ruth Gardner ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, The Law Office of Christopher Q. Davis, PLLC, allege, upon personal knowledge and upon information and belief as to other matters, as follows:

## NATURE OF ACTION

1. This is a collective and class action brought by representative Plaintiffs on behalf of themselves and on behalf of the proposed Collective and Classes identified below. Plaintiffs and the members of the putative Collective and Classes are or were employed by Defendant Amrock LLC ("Amrock") in the United States (collective claims) and New York (class claims) during the relevant Collective and Class Periods as residential appraisers, staff appraisers and other similar positions (hereinafter, "Appraisers").

2. Plaintiffs and the putative class members are and were non-exempt employees under federal and state wage and hour laws, should have been classified as such throughout their employment with the Defendant, and therefore should have received overtime pay consistent with

the requirements of these laws. These employees are similarly situated under Rule 23 of the Federal Rules of Civil Procedure, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

3.      Defendant has willfully violated the FLSA and the New York Labor Law ("NYLL"), §§ 190 *et seq*., by failing to pay Plaintiffs and all other members of the FLSA Collective for all hours worked and for improperly denying Appraisers the overtime compensation to which they are entitled.

4.      The Collective is made up of all persons who are or have been employed by the Defendant as an Appraiser anywhere in the United States within the period of the past three years from this action's filing date through the date of the final disposition of this action (the "Collective Period") and who were subject to Defendant's unlawful policies and practices of: (i) for the period after June 2020, failing to compensate Appraisers for all hours worked during a workweek by encouraging underreporting of hours and off-the-clock work; (ii) for the period before June 2020, misclassifying Appraisers as exempt and ineligible for overtime; (iii) for the period after June 2020, miscalculating the appropriate regular rate of pay and failing to pay Appraisers proper overtime premiums for all hours worked over 40 in a workweek, and (iv) failing to maintain proper records, all in violation of the FLSA.

5.      Plaintiffs consistently worked over 40 hours per week without receiving premium overtime pay for all hours worked. Throughout the relevant period, Defendant's policies and practices deprived Plaintiffs of earned overtime wages in violation of the FLSA and the NYLL.

6.      Plaintiffs were expected to meet daunting productivity requirements each workweek, forcing Plaintiffs to work in excess of 40 hours per workweek in order to qualify for production bonuses and avoid disciplinary action.

7.      Defendant, pursuant to its policies and practices, failed and refused to pay

appropriate overtime compensation for all overtime hours worked and created a compensation scheme that encouraged Plaintiffs and similarly situated Appraisers to underreport the number of hours worked per workweek. Defendants have violated and continue to violate the FLSA, 29 U.S.C. § 201 *et seq.*

8.      Plaintiffs seek relief for the Collective under the FLSA, and for the Classes pursuant to the applicable provisions of the NYLL, to remedy the Defendant's failure to pay all wages due and for recordkeeping failures, in addition to injunctive relief.

## **PARTIES**

9.      Plaintiff Patsy Bucciero ("Bucciero") was employed by Amrock as an Appraiser from around April 2016 until June 2022.  He presently, and at all relevant times, resides in Pleasantville, New York. At all relevant times he was an "employee" of Amrock within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Plaintiff Bucciero has been filed with the Court.

10.     Plaintiff Julius Baumgardt ("Baumgardt") was employed by Amrock as an Appraiser from around August 2015 until June 2022. He presently, and at all relevant times, resides in West Islip, New York. At all relevant times he was an "employee" of Amrock within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Plaintiff Baumgardt has been filed with the Court.

11.     Plaintiff Ruth Gardner ("Gardner") was employed by Amrock as an Appraiser from around July 2012 until February 2023. She presently, and at all relevant times, resides in Cheektowaga, New York. At all relevant times she was an "employee" of Amrock within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Plaintiff Gardner has been filed with the Court.

12.     Defendant Amrock, LLC, is a limited liability company headquartered in Detroit, Michigan, registered to do business in the state of New York. Upon information and belief, Amrock employs over 100 people in New York.

13.     Upon information and belief, at all relevant times, Amrock has had annual gross operating revenues in excess of $500,000 which is the threshold test for the "enterprise" requirement under the FLSA.

## JURISDICTION & VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

15.     Specifically, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. §§ 207, *et seq*.

16.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.

17.     Venue is proper in the United States District Court, Southern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the action that is the subject of this action occurred in this District.

18.     This Court has personal jurisdiction over Defendant Amrock, since Amrock conducts substantial business operations and, upon information and belief, has over 100 employees in New York.

## STATEMENT OF FACTS

19.     Plaintiffs and the members of the putative Collective and putative Classes are presently, or were formerly, employed by the Defendant as Appraisers. Residential real estate Appraisers are tasked with assessing the value of residential property through physical inspection,

4

researching comparable properties, reviewing public records, and collecting other data to determine current property value.

20.     The primary duties of Defendant's Appraisers include: scheduling appointments with homeowners or realtors; conducting physical inspections of residential properties; conducting on-line or municipal data searches; researching comparable local sales; and uploading completed appraisal reports.

21.     Appraisers are not required to have a specialized or advanced degree. Appraisers conduct appraisal assessments and produce appraisal reports pursuant to Defendant's standardized appraisal process. Appraisers do not generate new loan business and are not salespersons or learned professionals as defined by the FLSA 29 U.S.C. §213(a)(1).

22.     Plaintiffs and members of the putative Collective and putative Classes are subject to strict productivity requirements and are production employees, not administrators of Defendant's business operations. Appraisers do not oversee Defendant's business operations and do not exercise discretion or independent judgment with respect to matters of significance.

23.     Appraisers do not regularly direct two or more persons, and they have no management responsibilities.

24.     Appraisers are certified pursuant to a state licensing authority and are required to perform their work pursuant to state, federal and professional industry standards.

25.     Defendant expects Appraisers to complete a minimum number of Appraisals per month which often requires that Appraisers work in excess of 40 hours in a workweek. Appraisers who do not meet Defendant's production thresholds are disciplined by being assigned less work and/or less desirable appraisal properties.

**Amrock's Appraisal Compensation Scheme Prior to June 2020**

26.     Prior to June 2020, Defendant misclassified Appraisers as exempt from overtime and therefore not entitled to premium overtime pay for work in excess of 40 hours in a workweek.

27.     Defendant compensated Appraisers in part based on the number of appraisals produced. Appraisers were required to produce an appraisal report that adheres to Defendant's established guidelines, and appraisal methods are dictated by both regulatory and industry standards. Appraisal reports were due within a set period of time.

28.     Defendant monitors each Appraiser's "turn time", which is the amount of time it takes for an Appraiser to complete an appraisal and submit the final appraisal report.

29.     In order to meet Defendant's "turn times" and because Appraiser compensation was based in part on the number of appraisals completed, Appraisers frequently worked well over 40 hours per week. Plaintiffs and other similarly situated Appraisers regularly worked 12-hour to 14-hour days to meet Defendant's reporting deadlines.

30.     During the period when Defendant misclassified Appraisers as exempt from overtime, Defendant failed to institute a timekeeping policy or method of recording hours worked by Appraisers.

31.     During the period when Defendant misclassified Appraisers as exempt from overtime, Defendant failed to pay Appraisers overtime premiums for hours worked in excess of 40.

32.     For example, from May 20, 2019, to May 26, 2019, Plaintiff Gardner completed eleven inspections and worked over 82 hours during that workweek. Plaintiff Gardner remembers working excessive overtime hours during the week of May 20, 2019, to May 26, 2019, because she worked through the day on her birthday, Saturday, May 25, 2019, and did not complete her work until around 3:00 AM on Sunday, May 26, 2019.

33.     Defendant was aware that Appraisers were working in excess of 40 hours in a workweek. Upon information and belief, Defendant estimated that each appraisal takes around 9 hours

complete. Defendant was aware that Appraisers regularly completed more than five appraisals per week. Defendant created a bonus structure for Appraisers that included a top tier which required appraisers to complete more than 31 appraisals per month.

**Reclassification of Appraisers and Compensation Plan Changes**

34.     Beginning on or around June 22, 2020, Defendant reclassified Appraisers as non-exempt from overtime. According to Defendant's 2020 compensation plan, the reclassification was done to "recognize the hard work and long hours that many of you have been putting in to keep up with the extraordinary demand."

35.     Upon information and belief, Defendant reclassified Appraisers because it knew they were misclassified and were not being compensated in accordance with federal and state law requirements.

36.     Starting on or around June 22, 2020, appraisers were paid a base salary of $55,000 per year, plus an overtime premium identified as "premium pay" of "50% premium on top of a team member's base earnings for each overtime hour." The 2020 Compensation Plan states that "for each overtime hour, you receive an extra one-half of your weekly salary divided by the hours worked in the week."

37.     Defendant's June 2020 compensation scheme does not comply with the requirements of the FLSA and the NYLL.

38.     Appraiser hours fluctuate week-to-week based on the amount of appraisal work assigned and completed. Upon information and belief, beginning in June 2020, Defendant purported to implement the fluctuating workweek ("FWW") method for paying overtime but failed to properly calculate overtime premiums. *See* CFR §778.114(a).

39.    Upon information and belief, Defendant failed to include Appraisers' incentive bonuses in the regular rate of pay when calculating overtime premiums based on the FWW method, in violation of 29 C.F.R. §778.114(5) and 778.211.

40.    Defendant promised to pay Appraisers incentive pay to induce them to complete more appraisals. Appraiser's incentive-based pay is calculated by adding up an Appraiser's fees in a monthly pay period, subtracting $2000, and then multiplying the amount by the "Team Appraiser Multiplier" which is determined by an Appraiser's average "turn time." The "Team Appraiser Multiplier" was 60% for reports received less than one day after inspection, but it dropped to 50% for reports submitted more than one day after inspection, and to 20% for reports submitted two or more days after inspection.

41.    Payment of any bonuses, premium payments, commissions, hazard pay, and additional pay of any kind must be included in the calculation of the regular rate unless excludable under section 7(e)(1) through (8) of the Act.

42.    The incentive payments made to Plaintiffs are not excludable under section 7(e)(1) through (8) of the Act.

43.    For example, Plaintiff Gardner's pay statement for the pay period beginning on March 21, 2022, and ending on April 03, 2022, states as follows: Plaintiff Gardner earned $1,848.00 in biweekly incentive pay and $1,057.70 per week in salary. For the workweek beginning on March 21, 2022, and ending on March 27, 2022, Plaintiff Gardner was compensated for 27.9522 hours of overtime at a rate of $7.785 for each overtime hour worked. Upon information and belief, Defendant failed to include Plaintiff Gardner's bi-weekly incentive bonus in its calculation of the regular rate as required under 29 C.F.R. §778.211(b) and underpaid her overtime premium as a result.

44.    Thus, Defendant failed to pay all overtime wages due under federal law by routinely failing to include Appraisers' incentive bonus pay in its calculation of the regular rate for purposes of calculating overtime premiums.  By doing so, Defendant failed to pay all overtime wages due under the FLSA and the NYLL.

45.     In addition, in order to meet "turn time" thresholds, and because of other pressure exerted by Defendant, Plaintiffs and the putative Class and Collective routinely worked off-the-clock to complete reports on time.

46.     Appraisers were aware that reporting too many overtime hours would affect the number of appraisals assigned and the quality of the appraisal work they were allocated.

47.     Defendant required Appraisers to use an online software program to report their hours. Defendant was aware that Appraisers were underreporting their hours because Appraisers would log on and submit reports at all hours of the night and early morning in order to meet "turn time" thresholds. Reports and submissions were timestamped, often during the early morning hours, long after Plaintiffs had clocked out of Defendant's timekeeping system.

48.     Appraisers also underreported their hours because Defendant retained authority to take away appraisal assignments if an Appraiser's "turn-time" was too long or an Appraiser was clocking significant overtime hours.

49.     Appraisers frequently work in excess of 40 hours per week. Plaintiffs and those similarly situated regularly work on weekends and holidays in order to meet quotas and ensure timely submission of appraisal reports. Plaintiff Gardner, for example, regularly worked in excess of 100 hours per week.

50.     An Appraiser's compensation is tied not only to the number of appraisals completed, but also to how closely they followed Defendant's reporting standards and how quickly they completed appraisal reports.

51.     Defendant's conduct, as set forth above, was willful and in bad faith, and has caused significant damages to Plaintiffs and the putative Class and Collective.

## COLLECTIVE ACTION ALLEGATIONS

52.     Plaintiffs brings FLSA claims on behalf of themselves, and other individuals similarly

situated, as authorized under 29 U.S.C. § 216(b).  The individuals similarly situated in the Collective

are:

> **Proposed Collective:** All persons who are, or have been, employed by Defendant as an Appraiser in the United States within the period of the past three years prior to this action's filing date through the date of the final disposition of this action, who worked over 40 hours in at least one workweek during the Collective Period and were subject to one or more of the common unlawful practices set forth in paragraph 4 (i)-(iii), and not paid overtime premiums for all hours worked in excess of 40.

## RULE 23 CLASS ALLEGATIONS

53.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure on behalf of the following defined class:

> **Proposed Classes:**     **1. NYLL Overtime Class**: All persons who are or have been employed by Defendant as an Appraiser in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action, who worked at least one workweek during the Class Period and who were subject to one or more of the common unlawful practices set forth in paragraph 4 (i)-(iii) and not paid in violation of the NYLL.
>
> **2. NYLL WTPA Class:** All persons who are or have been employed by the Defendant as an Appraiser in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action, who worked at least one workweek during the Class Period *and* were subject to Defendant's common policy and practice of not providing lawful pay statements and/or wage notices in violation of the NYLL.

54.     Plaintiffs incorporate by reference the facts alleged in the preceding paragraphs above.

55.     Numerosity: The Proposed Classes are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that during the relevant time period, Defendant employed more than 150 individuals who satisfy the definition of the Proposed Classes.

56.     Typicality: Plaintiff's claims are typical of the members of the Proposed Classes. Plaintiffs are informed by other Appraisers that the putative Class was subject to the same aforementioned unlawful policies during the Class Period. Plaintiffs, and all other Appraisers were compensated in the same manner. All Plaintiffs were subject to Defendant's unlawful policies and practices of improperly failing to pay appropriate overtime compensation and failing to pay Appraisers for all hours worked alleged more fully above.

57.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

58.     Adequacy: Plaintiffs will fairly and adequately protect the interests of the Proposed Classes and have retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

59.     Commonality: Common questions of law and fact exist as to all members of the Proposed Classes and predominate over any questions solely affecting individual members of the Proposed Classes, including but not limited to:

      a.  Whether Defendant unlawfully misclassified Appraisers as exempt from overtime compensation under the FLSA and the NYLL;

      b.  Whether Defendant unlawfully failed to pay appropriate overtime compensation to members of the New York Class in violation of the NYLL;

      c.  Whether Defendant unlawfully failed to pay the New York Class for all hours worked in a workweek in violation of the NYLL;

d.  Whether Defendant failed to provide proper WTPA notices and pay statements to the NYLL WTPA Class members in violation of the NYLL;

e.  Whether Defendant maintained lawful wage and hour records under the NYLL;

f.  Whether Defendant's actions were "willful" under the NYLL.

60.  This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for the Defendant. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

61.  Class certification is also appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to the proposed Classes predominate over any questions affecting only individual members of the proposed Classes and because a class action is superior to other available methods for their fair and efficient adjudication of this litigation.

62.  Defendant's uniform policies and practices denied the proposed Classes the wages to which they are entitled to, including overtime pay and off-the-clock violations. The damages suffered by the individual members of the proposed Classes are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior, because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

63.  Plaintiffs intend to send notice to all members of the proposed Classes to the extent required by Rule 23. The names and addresses of the members of the proposed Classes will be available from Defendant.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Fair Labor Standards Act: Unpaid Overtime Wages)

64.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

65.     Plaintiffs consent in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b). Plaintiffs' written consent forms are filed contemporaneously on the Court's docket with this Action. Plaintiffs anticipate that other individuals will continue to sign consent forms and join as plaintiffs.

66.     At all relevant times, the Defendant constitutes Plaintiffs' "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

67.     At all relevant times herein, Plaintiffs and the members of the proposed Collective have been entitled to the rights, protections, and benefits provided under the FLSA.

68.     At all relevant times, upon information and belief, Defendant's gross revenue has exceeded $500,000.00.

69.     During their employment with Defendant, within the applicable statute of limitations, Plaintiffs and other members of the Collective routinely worked in excess of 40 hours per work week without appropriate overtime compensation.

70.     Under § 207(a) of the FLSA, employers like Defendant are required to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per work week.

71.     Prior to June 2020, Defendant, pursuant to its policies and practices, misclassified Plaintiffs as exempt from overtime and therefore failed to pay Plaintiffs overtime premiums for hours worked in excess of 40 hours per week.

72.     Defendant willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay Appraisers the appropriate overtime compensation for all the hours worked in excess of 40 hours in a work week.

73.     Defendant failed to accurately record, report, and preserve records of hours worked by Appraisers. Defendant also failed to make, keep, and preserve records with respect to each of its employees' hours in violation of the FLSA.

74.     The FLSA requires each covered employer, such as the Defendant, applying the FWW method of calculating overtime for salaried nonexempt employees whose hours vary from week-to-week, to include bonus payments.

75.     During their employment with Defendant, within the applicable statute of limitations, Defendant failed to pay all overtime wages due under federal law by failing to fully include Appraisers' nondiscretionary incentive bonus pay in its computation of the regular rate for purposes of calculating Appraisers' overtime.

76.     Despite the hours worked by Plaintiffs' Collective, Defendant willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay them appropriate overtime compensation for all the hours worked in excess of 40 hours per work week.

77.     Defendant's violations of the FLSA have significantly damaged Plaintiffs and the members of the FLSA Collective, and entitle them to recover overtime wages, liquidated damages, and attorneys' fees and costs.

78.     Based on the policies and practices articulated above, Plaintiffs and the members of the Collective were uniformly denied FLSA mandated overtime premiums.

79.     Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA.

80.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §§ 216(b) and 255(a).

81.     Because Defendant's violations of the FLSA are willful, a three-year statute of limitation applies. 29 U.S.C. § 255.

82.     Plaintiffs, on behalf of themselves and the Collective seek the recovery of attorneys' fees and costs to be paid by Defendant provided by the FLSA, 29 U.S.C. § 216(b).

<u>**AS AND FOR A SECOND CAUSE OF ACTION**</u>
**(New York Labor Law: Unpaid Overtime Wages)**

83.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

84.     At all relevant times herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the NYLL.

85.     At all relevant times herein, Defendant has been an employer within the meaning of the NYLL.

86.     Pursuant to the regulations issued by the New York Commissioner of Labor, 12 N.Y.C.R.R. § 142-2.2, an employer shall pay an employee for overtime in the manner and methods set forth in the FLSA.

87.     Plaintiffs and members of the New York Class were not exempt from the requirement that their employer pay them overtime compensation under NYLL, and they are entitled to be paid for all overtime hours worked during the New York Class Period.

88.     Prior to June 2020, Defendant had a policy and practice of improperly classifying Plaintiffs and members of the New York Class as exempt from overtime, and of failing to pay them overtime premiums for hours worked in excess of 40 hours in a work week.

89.     Beginning on or around June 22, 2020, Defendant reclassified Plaintiffs and members of the New York Class as non-exempt, despite no change in the Plaintiffs' job duties or responsibilities.

90.     By Defendant's failure to pay Plaintiffs premium overtime wages for hours worked in excess of 40 hours per week, Defendant has willfully, within the meaning of N.Y.L.L. §663, violated N.Y.L.L. Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. § 142.

91.     Due to Defendant's violation of the NYLL, Plaintiffs are entitled to recover from Defendant their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (New York Labor Law: Failure to Furnish Accurate Wage Statements)

92.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

93.     At all relevant times, Plaintiffs and the members of the putative NYLL WTPA Class have been entitled to the rights, protections, and benefits provided under the NYLL.

94.     At all relevant times, the Defendant has been an employer within the meaning of the NYLL.

95.     The record-keeping provisions of Article 19 of the New York Labor Law and its supporting regulations applies to the Defendant.

96.     N.Y.L.L. §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

97.     Defendant's failure to provide wage statements that accurately reflected all hours worked and correct rates of pay prevented Plaintiffs from identifying and correcting wage theft, in the form of unpaid overtime which, as set forth herein, actually occurred during their employment with Defendant.

98.     This wage theft was a concrete downstream consequence of Defendant's failure to provide information required by the NYLL.

99.     As a result of Defendant's unlawful conduct, Plaintiffs and the putative NYLL WTPA Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y.L.L. § 663.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all members of the Proposed Collective and Classes, pray for relief as follows:

A.      That the Court determine that this action may proceed as a collective action pursuant to 29 U.S.C. § 216 and a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.      That the Court determine that Plaintiffs' counsel can adequately represent the interests of the class as class counsel and class representatives, respectively;

C.      That the Court declare that Defendant has violated the Fair Labor Standards Act as to Plaintiffs and the putative Collective;

D.      That the Court declare that the Defendant has violated the provisions of the New York Labor Law as to Plaintiffs and putative Classes;

E.      That the Court declare that Defendant's violations as described above are found to be willful;

F.      That the Court award Plaintiffs and the putative Collective and Classes for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

G.      That the Court award reasonable attorneys' fees and costs pursuant to the NYLL and 29 U.S.C. § 216(b) and/or other applicable law;

H.      That the Court enjoin Defendant to cease and desist from unlawful activities in violation of the FLSA and the NYLL; and

I.        For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs on behalf of themselves and all other similarly situated persons demand a trial by jury as to all issues so triable.

DATED:        June 13, 2023
              New York, New York

Respectfully submitted,

Brendan Sweeney, Esq.
Christopher Q. Davis, Esq.
The Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, New York 10004
Telephone: (646) 430-7930
Facsimile: (646) 349-2504
bsweeney@workingsolutionsnyc.com
cdavis@workingsolutionsnyc.com

*Counsel for Plaintiff and the Putative Collective and Class(es)*